We're happy to begin argument. Please support your honor, Michael Cohn representing the Relators, Amham and Asadula Sadaqel. This case is about the fraudulent extension of a contract that caused the government to pay nine hundred and forty four million dollars more than it would have otherwise. The critical question is did the government intend to terminate Supreme's bridge contract on December 22nd, 2012, as opposed to a later date? If the government intended to terminate on that date, then any fraudulent conduct that interferes with that intention is necessarily material. And so turning to materiality, what first bridge contract the government says as soon as a new contractor is able to perform, your bridge contract is being terminated. Counsel, are you are you in the process of pursuing a fraudulent inducement claim or an implied certification claim or both? Well, both, your honor. But I think the materiality goes, in this case, to imply at the fraudulent inducement. And the fraudulent inducement that's going on here is the government had a contract with Supreme that was terminable at will. It was put in place so the government would have time to get a new contractor to take over supplying the troops in Afghanistan. The bridge, this contract was referred to as a bridge contract, the second bridge contract. It has a sunset provision in it that that it would terminate automatically on December 12, 2013. However, it was a terminable at will contract and the government issued what's known as a justification and approval, a J&A that had to be signed off by the highest contracting authorities within the Defense Logistics Agency. And in that J&A, in black and white, in clearest terms, it says no additional orders will be placed against the bridge contract once the new contractor can commence performance. So the actual termination date of the bridge contract was crystal clear. It would terminate necessarily the day Anham, who won the contract, could commence performance. And this was also set forth... Counsel, if I could ask you, as I understand the record, the bridge contract was entered into prior to any of the alleged nefarious activities here. So if your argument is the government was induced originally to make the bridge contract, I'd like for you to address that. I take it from what you're arguing that there was some sort of an inducement later on not to terminate the contract. I'm not sure exactly what your argument is. Yes, yes, your honor. The inducement was to extend the bridge contract. There is no dispute that the contract, the bridge contract was being performed according to its terms, the pricing, everything that was in it. There is no dispute that it was being carried forward correctly. However, the bridge contract charged the government 44% more than Anham's contract would charge. And the government realized that if it could terminate the bridge contract as soon as possible, it was going to save a lot of money. In this case, in an 11-month period of time, the difference in charging between Anham's awarded and Supreme's contract, the bridge contract, was 944 million dollars in an 11-month period, the difference in cost to the government. So the government made it clear that it intended to terminate Supreme's bridge contract as soon as possible. And when they awarded the contract to Anham, it stated that the anticipated date that Anham would commence performance was December 22nd, 2012. Anham said we can meet that date, and the complaint makes clear that Anham could meet the date, but for the fraudulent course of conduct that interfered with it. So in a contract extension situation, it's not the fraud when it happens in the formation of the contract, it's the fraud without qualification if it enters and taints the contract. You know, the Supreme Court said the fraud did not spend itself with the execution of the contract, it's taint entered into every swollen estimate. The taint, once the fraud enters into the picture, it taints everything after it. That goes for the implied false certification claims deal with mandatory integrity and business ethic responsibility determination, which is under 48 CFR 9.104. That responsibility determination is a requirement that the contractor must be in business ethic responsibility. And if they can't, their contract must be terminated. In this case, we're looking at radically immoral conduct. We're looking at bribing government officials to establish a private militia that would go in and take the property of a contractor. The property that the contract had a bill of sale for for the land, had already spent $20 million to construct a warehouse on it, was in possession of the land for all over a year. And all of a sudden, an armed militia pulls up with guns and kicks them all out of the site without any warning or anything. Without that warehouse, the Kandahar warehouse, Anham could not commence performance of its contract. Eventually, Anham went and got an injunction. And the injunction required all the other people to remove and for Anham to take control of its warehouse again. But the injunction couldn't be enforced, because the And was paid bribes in conjunction with this case. And it was at the signing of the fraudulent land transfer documents. So there is simply no way for the mandatory integrity business ethics responsibility determination to be made in Anham's favor, which meant they lost the contract once they engaged in that contract, period. More importantly, there was an ongoing bid protest that Anham, that Supreme had initiated, where they were challenging the mandatory integrity business responsibility determination of Anham. And in that proceeding, they didn't identify that they were paying bribes, they didn't identify all of their fraudulent conduct. So that was an implied false certification to the government. And then kickbacks, you can't pay bribes on government contracts. That's also an implied false certification, the fact that there is proof firsthand proof that the bribes were paid. And then there's the conduct code of business ethics, which requires the contractor to timely disclose in writing when the contractor has credible evidence that Well, there's more. It's the people who were meeting with the government with the LA or the people responsible for organizing and paying the bribes. They didn't tell the government they were paying the price. So I think that satisfies the the implied false certification. Um, what did the what did the criminal prosecution that you stick in the appendix have to do with it? I'm sorry, I didn't hear the question. You have an there's there's a criminal there's an indictment or an information in the in the appendix. I say what did it have to do with this? I think it's that would just be a prior bad conduct, but not it's not germane at this point. Well, then what are you doing, putting putting something in the in the record here that doesn't have anything to do with it? So you admit it had nothing to do with it? Well, no, I think it sets what you're saying about domain. That's pretty much well, let me rephrase it. It's prior conduct in the contract that Supreme was attempting attempting to continue on with. It had been sanctioned by the government for prior false Claims Act activity. It just shows prior, uh, and the same people who were identified in that complaint. Some of them are the persons in this case. So it just shows, you know, prior bad acts. Council, let me let me ask you a question about your materiality argument. In Escobar, the Supreme Court talked about materiality. And one of the qualifiers listed was that if the government pays a claim, despite actual knowledge that requirements were violated, that strong evidence that the record correctly here, the, uh, Anham had told the Defense Department quite a bit about what they alleged that Supreme had done, but yet the government kept paying them. So why wouldn't that take you out of materiality under Escobar? Because the government did not have actual knowledge, which is the Escobar standard. The D. L. A. The government attributed what Anham claimed to be bad acts on the part of Supreme. They sent an email to Anham saying it's no more than proffered excuses. So, uh, there was no and Anham admitted it had no actual evidence of any fraudulent acts on the part of Supreme. Uh, the only time what happened with the actual knowledge is when the when the other relator acid, ruler, solder, kale, who is linchpin of this entire case. He is the brother of one of the named defendants. He is in the room when the fraud scheme happens. He gets to hear it all. He knows that they're going to the warehouse. He knows they're going to pay bribes. He knows how the money was transferred. He was a bag man and brought $100,000 to one of the government officials as a bribe. And that relator came forward much later, and it was only after that relator came forward that Anham obtained actual knowledge of what the It was the only time the first time the government actually obtained actual knowledge of the fraudulent activity. You don't have to use all your time. I'd like to, um, point out, you know, Wilson case, which is very, very important. Uh, it establishes objective falsehood standard. You know, the fraud, the proof of the fraud has to be true or false. It has to be empirically verifiable. And in this case, the fraud hinges on whether or not Anham owned the land and the warehouse, or did Supreme own the land and warehouse? It's a binary on and off off situation. It meets the objective falsehood standard. So, you know, and we have Supreme openly discussing its need to take control of the warehouse to prevent the government from transitioning to Anham. We have Anham in possession of the actual bill of sale for the property a year ahead. A year before anything happens in June 11. You have Anham physically on the property for an entire year, during which time they construct a $20 million warehouse. And all of a sudden, without any knowledge, warning, notice or anything, an armed militia shows up with guns and they kick all their security people and all their contracted people out of there and take over their, their, uh, their warehouse. Not a single piece of paper, not a peep from anyone. Okay. And how, why does this happen? Because Supreme secretly wires $20 million to its subcontractor to give money to the former landowners just for them to say, Hey, we're going to sell it to you now. Supreme had no business need for the warehouse. Uh, Supreme didn't account for the $20 million in the corporate books for several years. The, the transfer documents, there was no actual agreement in place for the $20 million. That didn't happen for several years later, if it ever took place, they had to pay bribes to government officials in order to get their armed militia in there. And Anham got an injunction from the Afghan government requiring that the property be returned to Anham. And when Anham sought to enforce the injunction, the government official responsible for, for giving that relief to Anham was on Supreme's payroll and bought off and they couldn't get possession of their warehouse. So what did Anham have to do? They ended up building an entirely new warehouse at a separate location and it took them about a year to get that together. And during that course of that year, the $944 million more than it would have if, if Supreme hadn't sent a militia in there to seize the warehouse. It's that simple. I'm pretty much done with my time. Uh, but I think I reserved three minutes for a rebuttal. Thank you very much. We'll be happy to hear from Mr. Bickleider. Do I have that right? You did pronounce my name correctly. Um, Your Honor, um, let me start, Your Honor, by saying that so many reasons this case doesn't fit as a false claims act case. That's not just being rhetorical. I'll get to the, I have at least seven points which say that, which, and all backed up by decisions of this with two of Judge Agee's points, because I think they're important. What is the question about the timing? In this case, this is the first case that I've seen that I've, I've looked, I've looked for them, where the fraud takes place after the inducement. It's impossible. Fraudulent inducement requires that a material fraudulent representation during the time that the agreement is being formed, formation of the agreement. Here, five months elapses between the June 2012 second bridge and the actual, um, and, and the actual frauds that are being asserted. And five months makes it impossible. And Your Honor should be under, should understand. There was no other agreement. The second, the second bridge is itself an extension. Mr. Cohen averts to a, an extension. There was no extension beyond the second bridge, which again occurred in June of 2012. But the frauds occur beginning in November of 2012. So for that reason alone, Your Honor, Your Honors, the, um, uh, the contract could not have been fraudulently induced. The law had, the law is clear that the cases in this, in this circuit, including, um, including, uh, Harrison one, it all involved traditional allegations of fraud in the inducement. Namely, as I said, the fraud, the fraudulent agreement or extension occurred before the fraud. There's a fraud, then an exemption, then a contract extension or modification. As Judge Alston concluded, because fraud in the inducement is concerned with whether the contract or extension of government benefits was obtained originally through false statements of fraudulent contract. You're citing Wilson. A supposed fraudulent act five months later is, is, cannot possibly be a fraudulent inducement. Let me ask you something, sir. What did the, what did the Department of Justice, the Attorney General, say the, about this lawsuit? Well, Your Honor, um, they said nothing. They declined to intervene. And as you're right, they filed a notice of election to decline intervention. Precisely. Precisely. What did you notice? What did that notice say? I look for it here in your appendix. I don't find it. It was, it was a simple declination as far as I can recall, Your Honor. We declined to, we declined to intervene. It may have said more, Your Honor. I've got to be honest. I had not looked at it, um, uh, recently, but I believe that it's, it simply said we declined to intervene. The complaint was served on the Attorney General. Precisely, Your Honor. And he declined to, she, as was he, then he declined to get involved. And it was not until after that, that it was served on your client. Correct? Correct. After, after the, after the intervention was, was, was. But you don't have any idea what the reasoning of the Department of Justice was? I have a good idea, Your Honor, but I can't, but it wasn't in writing. So I can't, it would be, um. I'm sorry? I have a good idea, but it's not in writing, Your Honor. So I'm not gonna, I'm not gonna repeat what I was, what I was, what I was told. But what I will say is this, Your Honor, that in, in Triple Canopy, which is a case, which was a case in which you were on the panel, Your Honor, Your Honor pointed out, or the, the panel pointed out two factors which led to a finding of, uh, which, which led to a finding that there was no, there was no materiality. One was that the government continued to pay, uh, to pay under the contract, which is exactly what happened here. After, after twice, the head of the Admiral Harnachek met with Supreme and met separately with, with, uh, with Anham. The Admiral made a, decided to continue doing business with Supreme, which is not surprising since Supreme was in, he would, the, the, the second bridge had a term, uh, an expiration date. The expiration date had not been met and he continued to do it. And by the way, along the way, Admiral Harnachek said that with regard to the allegations made by Anham, that there were no smoking guns. And that as Mr. Cohen pointed out, he also said, these are, these are excuses being proffered by, by Anham for its not being ready to perform under the contract. So we have the two things that Your Honor pointed out, that was pointed out in the Triple Canopy case. We have the government continuing after it was told by the head, after the head of the agency was informed, continuing to pay. And we have a failure to intervene, a refusal to intervene by the government. And there's a lot more here that's going on in terms of materiality, Your Honor. Uh, it's not material because there's no connection here between any of the acts that are alleged to have been committed by Supreme, which of course are denied, and any, any payment decision. No, there's no, there's no connection. And Judge Alston correctly pointed that out. What we have here instead, Your Honor, is we have a whole fraud. But that's not the law. The law is not the underlying frauds account. It's whether or not, and I will, it's not whether the underlying frauds, but whether the statute attaches liability, not to the underlying fraud, or to the government's wrongful payment, but to the claim for payment. That was in It has to be a allegation that the underlying, has to be an allegation that the underlying fraud caused a payment decision, in some way influenced the payment decision. And it just isn't there, Your Honor. You can look, Judge Alston didn't find any base, a large part of his decision on the fact that those unnecessary allegations, that there be a, a connection between the so-called frauds and a payment decision, just aren't present. Not present on the false, on the falsely claiming contact allegations, and they're not With regard to, with regard to the, to the pleading in hindsight, which occurred here, what the, what the appellants do is they say, look, we now realized that, that there was fraud beginning in November 2012, and that has a retrospective impact on the claim, on the contract, on the second bridge, which was entered into in, in, in November, excuse me, in June of 2012. Well, this court again says you cannot, you can make mere allegations of allegations of fraud by hindsight will not satisfy Rule 9b. A matter of fact, Rule 9b is not satisfied for many, many reasons. We don't, if you look at the complaint, you won't find who, what, when, where, or how. You won't find the, the allegations which are the basis of the, of, of the implied false certification. You won't find who said them, when they were said. You simply have speculation, conjecture, which doesn't meet Rule 9b. It doesn't, it doesn't meet any of the requirements that are required. Um, Mr. Cohen brought up the question of whether there was an objective falsehood. Judge Alston dealt with that correctly. Judge Alston looked at, looked at the complaint as pled, and saw that, that the admiral, Admiral Harnacek, the head of the agency, had found that there was, that there was merit when it comes to arguments on both sides to the ownership of the property. Uh, that clearly is a, is a good basis. And that also is a basis for a materiality, that there's no materiality here. If in fact the agency believed that there was, that this was just simply a two-sided dispute, one side claiming the prop, the, uh, the cost of land, the other side, um, objecting, uh, saying that they had, they have it, they have the, uh, uh, they have the right to the land. Um, that is simply a, uh, there is no objective falsehood. If, if, as occurred in a dispute, uh, as to some subjective analysis, some, some subjective finding. Counsel, I, I understood, um, Mr. Cohen to make an argument on, with regard to fraudulent inducement, that there was a, uh, an inducement during the term of the bridge contract, not to terminate it prior to its end date. What's your response to that argument? Your Honor, uh, the simple responses have been pleaded in his complaint. There's no allocation which says such and such a date, in front of such and such a date, why an inducement was made. There's no fleshing out of an inducement. None. Zero. In the absence of those kind of particularities, particular allegations, Judge Alston was correct in saying that there's no basis to find, to let this case go forward. It was up to the relator to provide with particularity to, to, to, to, to, um, to let with particular act, particularity those allegations and they just aren't there. So there's nothing. And again, remember Your Honor, there's no, there's no platform. There's no time between, um, from the time that they say that the, that the fraud began, which is November of 2012 until when the government actually, when the government actually terminated the contract in November, 2013, about three weeks or so before the expiration date of the contract, there was no, there was no platform. There was no opportunity for a false statement with regard to, which could result in fraudulent, just wasn't there. There's no place for it. And they don't, and they certainly don't assert it. They certainly don't make the for a fraudulent inducement. You don't have to take all your time, sir. Let me, um, let me just make a couple of more points. Um, first of all, Your Honor, I thought this, um, the implied false certifications, there's no question here, but that there's a, is that there's an absence of, of, of an, of an allegation. Take a look at the, at the complaint, which would lead to the basic fundamental, um, assertion that the, uh, that the, uh, that Supreme made any representations, which were contrary to any, uh, any material contract or regulation. They just, they just aren't there. What they do instead is they assert the re, nothing with regard to the contract, because the contract, uh, there's no provisions of the contract at all that are cited in the second amended complaint. And with regard to the regulations, they're, they're just, they just have nothing to do with this case. There's an argument that, um, that there was, as Mr. Cohen said, that somehow there was a kickback. The kickback, uh, provisions only relate to the actions by, uh, by subcontractors trying to get favorable treatment from an, from a, uh, from, from the prime contractor. That's not the that the regulation, which, um, which, uh, uh, requires that, uh, uh, that, that, that an applicant's behavior, um, previous behavior be, uh, be reviewed when it gets a, when, when it's up for a new contract. But Supreme was an incumbent, so, was an incumbent, so that regulation doesn't work. And then they have the, they, they, they cite the, uh, uh, a, a provision, a regulation, which requires the contractor to, uh, disclose any violations of Title 18. Uh, they haven't cited any, any, any violations of Title 18 here. Um, what the violations were were the violations of Afghan law, um, or other provisions, but not Title 18. So none of those provisions, which since they don't apply, um, the second prong of the Escobar test for, for false certification cannot be met. Uh, there's simply nothing here which asserts, which, which, which would make, uh, Supreme, uh, liable for violation of any of the regulations or contract. Um, false certification just doesn't apply. Um, uh, let me just, I'll finish with this, Your Honor. This is at heart a, at bottom, a contract, a contract dispute. And him won the contract. It was a successful bidder. Now they're claiming somehow that Supreme violated a contract and regulation, but that's not what, what happened, but not what, but that's not what's required here. Uh, they have to show, um, that this is more than just a dispute among competitors. Um, in both, uh, Owens and Wilson, uh, uh, Judge Wilkinson wrote that you cannot shoehorn, you cannot shoehorn a, uh, uh, a contract, excuse me, a, a, um, a business tort and make it into a false claim. And that's what's happening here. They've taken some business courts directly, directly, they say against them, but not against the United States. And that's, that's an important distinction. And they try to shoehorn it into a false claim in that case, which this court should reject. If there are no further questions, I will, I will turn this to Mr., uh, Mr. Cohen. Thank you very much. Mr. Cohen, do you have a rebuttal? Uh, I just like to point out that in Harrison, it is clear, it clearly states that, that it reaches any fraud without qualification. Okay. The fraud did not spend itself in the execution of the contract, it takes everything afterwards as well. FCI liability attaches when the claim is submitted, not when the fraud occurs. So the fact that trying to say the fraud has to occur during the contract formation doesn't make sense if it's the timing of when the fraud occurred. In Wilson, they were claiming the fraud, you know, they were five months be reversed. Here, the fraud occurred with the seizure of the warehouse. And it's the claims that were submitted after seizure of the warehouse that are, uh, that are actionable. The liability attached, not when the, not when the fraud occurred. All that's necessary is that the fraud proceed the submission of the claim. And once the fraud seeps in, it doesn't dissipate. Every claim filed afterward is automatically tainted. Most importantly, the government made clear that no additional, this is black and white in their, in their statements, no additional orders will be placed against the bridge contract until Anham's contract is in place. And the government told Supreme and, uh, and Anham that the contract, that Anham's contract would be in place as of December 22nd. And it would have immense on that date. But for one thing, if you ask, why didn't the bridge contract terminate on December 22nd? If you read through everything that's in this record, there is only one reason why. Supreme sent in a military force and took Anham's property. And we claim, and it's an on off binary choice. Anham own it. And if they did, then it was per se, fraudulent conduct. I think, uh, with regard, with regards to Admiral Harnacek, you know, misleading the admiral does not give you a pass. That's part of the fraud scheme. Um, you know one of the whistleblowers asked to do the solder kale was in the room when the fraud scheme was hatched and knew everything about it. Everything about who, what, when, where, why is laid out in excruciating detail on the complaint. Um, my time is up. Thank you. Thank you very much.
judges: Diana Gribbon Motz, Robert B. King, G. Steven Agee